Case number 13-1898, United States of America v. Patricia Marie Sawasky. Arguments not to exceed 15 minutes per side. Mr. Dennis Torres, as the supervising attorney, is turning the argument over to the law student, Spencer Gottlieb. Your Honors, I have the pleasure this morning to present to you Spencer Gottlieb, who is a student at the Federal Appellate Litigation Clinic at the University of Michigan Law School. We have previously requested permission to allow Mr. Gottlieb to argue. We appreciate the courts granting that motion. Thank you. Good morning, Your Honors. My name is Spencer Gottlieb. I'm here arguing on Ms. Sawasky's behalf today. Before I begin, may I please reserve three minutes for rebuttal? Yes. Thank you, Your Honor, and may it please the court. No one in this courtroom today knows whether mind-altering, psychotropic medications influenced Ms. Sawasky's choice to plead guilty. And for that reason, the lower court plainly erred in accepting Ms. Sawasky's guilty plea. If nobody knows, how can you show prejudice? I mean, it's ironic that you're saying that certain things should have happened, and maybe they should have. But nowhere does even your client claim that she was actually under the influence of any of the medication that was discussed two months earlier at the arraignment proceeding at the time of the plea. That is correct, Your Honor. But as this court knows, Rule 11 imposes an affirmative obligation on the lower courts to not just inform the defendant of what he or she is relinquishing, but also to ensure that the defendant understands what he or she is relinquishing. And the void that Your Honor noted, which is that we don't know, is precisely the problem, and why this court should allow Ms. Sawasky to withdraw her guilty plea or to remand this case for further examination of the plea. Well, he did ask her at the time of the plea change whether or not the person had taken any drugs or alcohol that would affect her ability to understand, and she said no. That is correct, Your Honor. So the only thing the record shows is that at the time in question, not two months earlier, but at the time in question, there's no indication she was under the influence. She said she was not under the influence. She said she had no problem understanding. Her counsel doesn't say that he had trouble communicating or anything. So there's no evidence that indicates that, in fact, she was under the influence. That's correct, Your Honor. But as of the arraignment, Ms. Sawasky demonstrated that she did not necessarily understand what the word drugs meant. The court at Ms. Sawasky's arraignment asked Ms. Sawasky whether she was on drugs or alcohol, and like at the plea hearing, she said no. But the district court asked what this court defined as the critical question in Winnick in Sixth Circuit precedent, which is whether Ms. Sawasky had any other occasion or any other cause that would impair her cognition. In Winnick, this court held that once a district court has reason to believe that the defendant has recently ingested a substance capable of impairing their cognition, it must make, quote, an additional inquiry. And this circuit held that the critical question in Winnick was whether she had any reason or that if there was any reason that impaired her cognition on that occasion. You understand Winnick is unpublished. Yes, Your Honor. But we still believe it's persuasive. The published opinions that we cite in our brief come from the First and Third Circuits, Cole and Parra-Ibanez. And in both of those cases, the circuit courts held that the district court had failed to make an additional inquiry. In Cole, the defendant said that he had taken drugs the night before the plea colloquy, but the district court failed to ask anything more about those drugs. And in Parra-Ibanez, the defendant – Let me tell you what practical problem that I am having here. And Judge Stafford has done this a lot longer than I did as a district judge, so probably could speak more knowledgeably than I. But you want the district court to ask questions. You want to say, all right, what specific medication are you taking and in what dosage, basically, right? No, Your Honor. What we're simply asking is to breathe life into the Winnick opinion. And once the court has a reason to know that the defendant is on a medicated regimen, as the district court had reason to know here, to simply make that additional inquiry. Oh, I understand. Make an inquiry. The inquiry is, what is the medication and what's the dosage you're taking? That's what the inquiry would be, right? It could be, Your Honor. It also could be something more minimal, simply whether you are on psychotropic medications on this occasion. Let's assume the person says yes. Here's my practical point. We don't need to be sparring about these details. I cannot figure out for the life of me what a conscientious, competent district judge would necessarily do with that information. Yes, I'm taking X drug or X drugs, plural, and in these dosages. Unless there's somebody there that can tell the judge what is the practical consequence of each drug and the drugs in interreaction with each other, once having asked those questions and gotten those answers, which you think are important, what is the district judge supposed to then do with that information? Well, again, the district court has the discretion to make the requisite finding of volatileness, as the Supreme Court held in McCarthy, which is one of the two objectives of Rule 11 hearings. But ultimately, what this comes down to, Your Honor, is the fact that the district court failed to adhere to this circuit's procedure, and procedure counts. Procedure is our best approximation of fairness and our best approximation that the defendant is voluntarily relinquishing those rights that eventually get surrendered at the sentencing hearing. What we're trying to figure out is where the holdings that parties are asking us to make take us, take the jurisprudence. So back to the question. What would the district judge have been expected to have done with the information, whatever it is, that you're claiming the district judge failed to elicit from the defendant? Well, again, Your Honor, there's a void in that information, and the district court would be able to make the finding of voluntariness. But the fact that the district court could not. How does the district judge make the finding of voluntariness when you find out that somebody is on psychotropic drugs if you don't know what the effect is at that moment of that drug or combination of drugs? Your Honor. The person seems competent, seems lucid, seems to understand, responds appropriately. The defense counsel doesn't say they're having any trouble communicating, which is usually the tip off. So now this person says, yes, I'm taking these drugs. What do you do with that information? Your Honor, respectfully, that's a fact-intensive inquiry, and this might not be a one-size-fits-all solution. But in Ms. Zawadzki's case, she was on Ativan, Celexa, Effexor. She made the fact that she was on a drug regimen for her severe depression and that she, quote, gets messed up in the head sometimes. But were those facts applicable also at the arraignment, that she was on those various drugs and she gets messed up in the head sometimes? The latter part was, Your Honor. The specific drugs that she was on were not made known until her sentencing memorandum. But again, that's the problem, which is that the district court failed to make the inquiry that would have made those facts known earlier. Was the inquiry at the arraignment satisfactory in your views? We believe it was, Your Honor. It was. So all that the district court needed to do at the plea hearing, you're saying, was ask, are you on any medication? And when she said, yes, have you been getting your medication? She says, yes. Is it affecting you? She says, I get messed up in the head sometimes, but I won't bore you with the things that you already know. But basically, there's not much more in that arraignment transcript from either your client or from the district court that goes to the kinds of things that you're saying are necessary today. Precisely, Your Honor. And that's why the remedy that Ms. Zawadzki asks of this court does not come at the expense of judicial economy. We recognize that there is some practical concern, but we do not believe that Ms. Zawadzki's remedy would turn the courtroom into a medical examination room. Let me tell you my second practical concern because this goes right into this. You seem to believe that the magistrate judge that did the arraignment either did or should have remembered that exchange from approximately two months earlier. And that really concerns me because we rely upon usually a duty magistrate judge to take a lot of these actions in place of the district judge. And either then you expect it to be the same person and they'll remember it, which seems to be unrealistic, or you apparently are thinking they'll then get a transcript of the plea of the arraignment and read that before the change of plea hearing when, as far as I know, there aren't transcripts, unless somebody has requested the transcript to be prepared. So I'm trying to figure out how this whole argument seems to be kinging on imputing what a magistrate learned at an arraignment, which just coincidentally happened to be the same one here, but it could be a different one, to that same magistrate two months later when they take the plea on behalf of the district judge. And do you not see a practical problem there? Your Honor, we do, and we recognize that, again, the judge could have been, there could have been a different presiding judge at the plea colloquy, and then Ms. Zawadzki's own attorney could have objected on the record to ensure that Ms. Zawadzki's attorney was competent at that hearing. But ultimately, Your Honor, it's the courts that are the safeguards of defendants' liberty, and it's why we have these procedures in place. The Supreme Court two years ago in Lafleur v. Cooper noted that we're now in a criminal justice system that is no longer grounded on trials but on plea agreements. And for that reason, Ms. Zawadzki's plea agreement is, or her competency and her voluntariness to enter into that plea agreement. So let's say that one magistrate does the arraignment, and a different magistrate then takes the plea on behalf of the district judge. Would whatever the defendant said to magistrate one be imputed somehow to magistrate two? Well, Your Honor, that would present a different factual scenario. That's why we ask hypotheticals. Yes, Your Honor. But, again, the reason why Winnick is applicable here would not be applicable in the scenario that you're on. With all due respect, you're really doing a very smooth job of just avoiding answering the question. I'm trying to figure out whether everything a magistrate judge does in an arraignment then is imputed to whoever does the change of plea hearing. So then I'm trying to find out, does it matter if it's the same magistrate? So you're asking for us to apply only a same magistrate rule, or would it also apply if it was a different magistrate? Your Honor, this Court need not reach the broader question of if a different magistrate judge, and I understand Your Honor's concern about if there was a change of magistrate judge, but the fact is that there wasn't here. And that's what makes this a narrow case and what makes Winnick applicable. Did she, your client, have the same lawyer at the arraignment as at the plea hearing? Yes, Your Honor. So I wonder whether this is at bottom, if there is a problem with whether she was under the influence of medications and or not competent, whether at bottom the problem is that her counsel at those two hearings should have been alert to the issue of her medications and her mental state and a question of IAC at the end as opposed to a question of whether the presiding judge complied with Rule 11. Your Honor, that is an additional concern, and this Court could certainly remand this case for an additional inquiry into an IAC or a Strickland violation. But ultimately, the Court could not have accepted that plea according to Winnick and according to the precedent. I see I'm out of time, Your Honor. May I finish the question? Thank you. This Court could not have accepted that plea because there was no voluntary relinquishment on the record as per McCarthy and as per Winnick. May I, please? Yes. How many times did Ms. Sawowski appear before a judicial officer? Your Honor, on the record, we have the arraignment, we have the plea hearing, and we have the sentencing. And how much time elapsed from the first appearance until the day she was sentenced? Well, between the arraignment and the plea hearing, there was about a two-month gap. All right. And then between the plea hearing and the sentencing, I don't want to mislead this Court, but I believe that there was somewhere around another month. It was in July of last year, so I believe it's another month or two. All right. So we have three months. And I believe my reading of the record was that somewhere in that 90-day or three-month span, there was a letter produced from her treating physician dealing with her listing the medications that she was on. Yes, Your Honor. And so that was before the court. It was before the sentencing hearing, yes. Yes. All right. And so the physician upon whom she was primarily relying for her medical treatment was aware that she was before the court. That's not reflected in the record as a before the plea hearing. I mean, to whom it may concern, letters about giving out medical information, as I read it, it was directed either to the probation officer who was doing the pre-sentence report or someone. But the court saw it. It was intended for some judge's eyes, right? Yes, Your Honor. That is correct. To figure in what disposition was going to be made of this case. Not the disposition, Your Honor, but the sentencing because we have no reason to believe that. That's the ultimate disposition. Right. Okay. All right. Now, anywhere along that time, was there any indication from Ms. Silovsky or her attorney that she was not competent to participate in these judicial proceedings? Or was it only after the hammer came down on the sentence that we heard this? No, Your Honor. At her arraignment, she stated to the court that there were parts of the proceeding that she did not understand. She consulted with her attorney and then claimed she did understand. But she did claim that she gets messed up in the head sometimes and does not necessarily understand. Did she ever seek to withdraw her plea or ask for additional continuance to gather more medical information? Either she or her attorney? I deny, Your Honor. All right. And apparently she's able to speak up for herself as I read this. To a certain extent, yes, Your Honor. Because there was that colloquy between her and the judicial officer. I mean, they talked like you and I are now, eyeball to eyeball, and talking to each other, correct? Correct, Your Honor. The lawyer can sit down. The judge wants to talk to the defendant, okay? Correct. So anywhere along that trail, was there any indication, other than what you've told me, that she wanted to withdraw her plea, had some second thoughts, wanted to garner some more medical information, wanted something else for the ultimate decision maker to consider? No, Your Honor. And for that reason, we are under the plain error standard, which we recognize is a demanding standard. I'm sorry to impose on everybody else's time, but thank you very much. In fact, that doctor's letter, while it did say that her injuries could affect judgment, insight, and mood, at no point does the doctor even say that the drug she was taking did impact her ability to cognitively understand at either the arraignment or the change of plea proceeding, correct? Correct, Your Honor. But the doctor's memorandum did state that she experienced a decline in functioning and reasoning, and for that reason, she took these psychotropic medications. So there's a dual problem here, which is that the drugs could have influenced her cognition from a stable state. I understand could have. I get that. Even what the doctor does say doesn't say that it did, correct? That's correct. And, again, one of the problems for that is that we just didn't have any answer at the plea hearing if Ms. Swatsky was on these medications because the doctor, post facto, could have stated that Ativan or Celexa or Effexor, when taken in whatever dosage, might have a negative impact, Your Honors. Thank you. Thank you. Good morning. Sally Behrens on behalf of the United States. May it please the Court, based on the dialogue that's just occurred, unless the Court has questions, the government is prepared to stand on its briefs. Well, it's a serious matter if a defendant is on the psychotropic medicine and doesn't understand what's going on or if the defendant has had a serious injury, which this woman had a brain aneurysm and it seems like a major . . . I won't put words in the doctor's mouth, a, quote, decline in functioning as well as mood since that. So why shouldn't there be a responsibility for the district court to ask the specific question, are you on any medications or have you had any injuries or some kind of similar things, regardless of what happened at the earlier hearing, the arraignment? I would submit that the district court asked a very broad question to elicit that type of information. It asked, are you suffering from any physical or mental problems today that would affect your ability to understand what's occurring here in court? That is a very broad question, and the answer was no. So in this case, on a plain error standard, I think that that well satisfies Rule 11. It's notable also that that is a different answer than was given in the arraignment. In both hearings, in both the arraignment and the plea colloquy, the magistrate judge asked the exact same two inquiries that are designed to elicit the information that the court's looking for about whether or not the plea is knowing and voluntary and intelligent. Specifically, are you suffering from any physical or mental problems today that would affect your ability to understand what's occurring here in court? And have you taken any drugs or alcohol that would affect your ability to understand what's occurring here in court? The court asked both of those questions, and in the plea colloquy, the defendant said no to both. On that basis, on a plain error review, there's no further basis, for the magistrate judge to inquire further. Now, as a policy matter, which may be where the court is going, I think that this is a slippery slope and an interesting question about what is the most effective way to do a plea colloquy. And there are two former, well, one former and one current district court judge on the bench who probably have a more informed view of the matter. But I would submit that giving judges discretion to focus on the point of Rule 11 and to conduct an inquiry based on the person that's before the court is more useful and informative than having a checklist of questions that the magistrate judge has to check off along the way. So, assuming that we didn't have the arraignment hearing for the moment, that we just had what transpired at the plea colloquy, you are comfortable with those two questions being the key questions. And the answer of the defendant, no, means really there shouldn't be any need for any further inquiry by the district judge. Is that a fair statement? Unless the defendant were to exhibit behavior that raised a further question about the person's competence to enter the plea. And in this case, that certainly wasn't the case. She was very active during her plea colloquy. She stated, you know, she jumped in when she thought something was misstated. The court asked her several times if she needed more time to consider what was going on, and she said no. So, it sort of gets back to a question I asked your opponent. Is the problem in this case perhaps an IAC claim against the lawyer at that point in time, if, in fact, Ms. Swosky has or had, I should say, had a problem, whether it was due to the medications or due to her injury, had a real problem in making a voluntary and knowledgeable and intelligent plea agreement? Well, the court's question relies on or assumes some facts that are not within the record, that there was a problem here, that she was actually not competent. If . . . Right. In this hypothetical world, then I agree that the correct claim would be an ineffective assistance of counsel claim against what I would note also, which isn't in the record, that Paul Peterson is a federal defender with 40 years of experience. But, yes, I think that the court is correct that . . . And that would come in a 2255 as opposed to a remand by us to the district court. Is that right? That's correct. There certainly is no record here to support an ineffective assistance of counsel claim. Before we even get to IAC, what do you think is the proper role of the defense counsel to ferret out and present problems if there are cognitive problems? I realize this is a compound question. To what extent should the district judges be able to rely upon defense counsel in their assessment if they don't come forward and say, my client's got a problem? Certainly, there are cases that talk about or allow the district court to consider the fact that no one has raised an issue. No one's attempted to withdraw the plea. The defense counsel hasn't raised any concerns about the defendant's competency. That said, I also believe that the district court is required to make its own inquiry under Rule 11, certainly, and to consider all of the facts before it, including whether defense counsel has voiced any concerns about the defendant's competency. I think we all agree that the ultimate responsibility is on the magistrate or the district judge. But the irony here is we're sort of quibbling about . . . you only asked two questions and you should have asked four or six or whatever the undefined proper number is, when at best, the exchange in open court is going to be a very short sequence of questions. Contrasted with the defense counsel presumably having spent a significant amount of time with a client over a longer period of time. If anybody has had sufficient contact to have the lay ability to assess that person, and that's what the district judge would have, a lay ability, it seems like the defense counsel's got a much better shot at ferreting out whether there's a problem than a district judge would in two or three questions. Those are certainly valid points. I agree. On top of that, at some point, will the U.S. attorney always have had face-to-face contact with the defendant in connection with a change of plea? No. So we can't really rely upon the U.S. attorney having remained silent because you wouldn't expect them to have known in any event. That's correct. Thank you, Your Honor. Thank you. Good morning again, Your Honors. This case does not present a slippery slope. If the goal of the question asked during Rule 11 as to whether a defendant is on drugs or alcohol is the court's best approximation for a defendant being competent to plead guilty, then simply asking a defendant whether they are on psychotropic medications serves that same goal and not at much of a cost to the district court. I'd like to return to your hypothetical, Judge McKee, before about whether there are other types of substances that we haven't even figured out that could theoretically have been required to be included in one of these questions. In other words, we've talked about drugs, and then you've said, well, somebody might not understand that includes psychotropic medications, so you're supposed to ask about that. Theoretically, there are probably other things that in theory could affect somebody adversely that you'd have to add to your laundry list, aren't there? That is possible, Your Honor, but certainly not with the ubiquity of medicine, and that's why asking about drugs, alcohol, or prescription medicines are much more similar than anything else out on the periphery. Would that have solved the problem if the judge had asked, are you on any medications, prescription medications? Yes, Your Honor, and certainly to return to Judge McKee's hypothetical about a district court not having knowledge, let's say, of the doses or the milligrams of a certain prescription medicine, we already entrust courts to make that inquiry with respect to alcohol and drugs. If a defendant states that he or she is on alcohol and the defendant responds that they had half of one beer the night before the plea hearing, we trust the courts to make a determination as to whether that plea is still voluntary. And that's why Judge Moore, asking a defendant whether the defendant is on any drugs, alcohol, or medicine and eliciting a no response or eliciting a yes but it's minor, allows the court to make a fuller inquiry. It allows the court to protect the integrity and the reliability. Well, suppose that the question were asked here, and this is a hypo, obviously. Yes. If the district judge had said, have you taken any prescription medication, drugs, or alcohol that would affect your ability to understand, and she had said no, what more should be done then? The district court would not need to do any more because the courts can rely on a defendant's sworn responses. The problem is the converse reality in this situation, which is that the court never had the opportunity to make that determination. But then what are we going to do about the fact that you ask about prescription medication, but a lot of people would probably interpret that to mean something that had been prescribed to them by a doctor. So then you also have to ask about medicine that ordinarily would be available by prescription, but that you got illegally. Well, Your Honor. You have to ask that, don't you? No, Your Honor. The court could simply ask whether the defendant was on medicine, period, or question mark rather, because alcohol, I see I'm out of time again. That's okay. We love to ask questions. And I love to entertain the court's questions. Particularly of law students. Simply asking the defendant whether they are on drugs, alcohol, or medicine would really capture the reality. And we understand that there may be other things, undiscovered things on the periphery, but that's not the situation before this court. The plain error distilled down is failure to include the word medicine. The plain error, we believe that should be the obligation of courts. But the plain error in this case, because that is not a requirement yet, is the district court's failure to make the additional inquiry and to ascertain that the defendant was pleading voluntarily. And for that reason, Ms. Swosky asked this court to allow her to withdraw her plea or to remand this case for further examination. Thank you, Your Honor. Thank you. And Mr. Gottlieb, we want to thank you for your presentation for your client. It is a pleasure to have law students such as you representing your clients in the excellent fashion that you have done. And we thank the Assistant U.S. Attorney for her presentation as well. But it is noteworthy to have students who do a fine job as you have done for your client. Thank you, Your Honor. Thank you.